**In re Raymond M. ZIMMERMAN, Debtor.**

**In re Larry D. & Shirley J. NEUMAN, Debtors.**

**Bankruptcy Nos. SG91-86620, SG92–01892.**

United States Bankruptcy Court, W.D. Michigan, S.D.

July 1, 1993.

DeGroot, Keller & Vincent, (James M. Keller, argued and briefed) Grand Rapids, MI, for debtors Raymond M. Zimmerman and Larry D. and Shirley J. Neuman.

Department of the Atty. Gen., (James D. Clarke, argued and briefed), Lansing, MI, for the Michigan Dept. of Treasury, Revenue Div.

Office of the U.S. Atty. (Tanya M. Marcum, and Terry L. Zabel, argued and briefed) Grand Rapids, MI, for the U.S. I.R.S.

Brett N. Rodgers (argued and briefed) Grand Rapids, MI, for chapter 13 standing trustee Raymond B. Johnson.

Paul F. Davidoff, P.C. (Paul F. Davidoff, briefed) Kalamazoo, MI, for amicus curiae chapter 13 standing trustee Joseph A. Chrystler.

Alexander C. Lipsey (argued), Kalamazoo, MI, for amicus curiae chapter 13 standing trustee Joseph A. Chrystler.

Before LAURENCE E. HOWARD, Chief Judge; JAMES D. GREGG, and JO ANN C. STEVENSON, Bankruptcy Judges.

## EN BANC OPINION REGARDING THE ALLOWANCE OF LATE CLAIMS IN CHAPTER 13 PROCEEDINGS

JO ANN C. STEVENSON, Bankruptcy Judge.

### I. Introduction.

This court has taken the unusual measure of sitting *en banc* to decide an unusual issue: whether late claims must be allowed in chapter 13 cases. This question gained attention as the result of another *en banc* decision, *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn.1992). That court made a facially appealing argument that lateness is not a basis for disallowance under 11 U.S.C. § 502(b). However, this panel rejects the interpretation of § 502 espoused by the *Hausladen* court, concluding that the issue is not so much one of claim disallowance under the substantive provisions of § 502 as it is of procedure.

### II. Factual Background.

This is a contest of legal theories; the facts of the cases are straightforward. In *Zimmerman*, the debtor commenced his chapter 13 proceeding on December 13, 1991. His plan of reorganization was confirmed on April 6, 1992. The state of Michigan was scheduled as a creditor, but failed to file a claim before the May 10, 1992 bar date. A late claim was filed by the Michigan Department of Treasury (the "Department") on October 1, 1992 in the amount of $2,315.51 for withholding and single business tax liabilities to which the debtor objected.[1] The only argument advanced by the Department of Treasury in support of allowing its claim is that this court should adopt the reasoning set forth in *Hausladen.*

The *Neuman* chapter 13 case was filed on March 26, 1992 and the plan confirmed on June 22, 1992. The bar date for claims was set as August 16, 1992. On December 29, 1992 the Internal Revenue Service (the "Service") filed a claim in the amount of $42,536.97. This claim was based upon a civil penalty assessed against debtor Larry Neuman as a responsible person for the failure of Star–Con, Inc. (a corporation in which he was an officer) to pay employment taxes. As in *Neuman,* the debtors objected to allowance of the claim on the basis of lateness. The Service raised *Hausladen* in defense of the claim, but it also asserted that certain fact issues exist as to whether the notice it received of the bankruptcy was sufficient to apprise it of the debtor's relationship to Star–Con, Inc.[2] At hearing counsel for the Service attempted to make an offer of proof as to this and other fact issues, but was not allowed to do so on the basis that such an offer was premature. Counsel was informed that if this court declined to adopt *Hausladen* the Service would have an opportunity to address the factual peculiarities of its case at a later date outside the *en banc* setting.

### III. Jurisdiction.

Jurisdiction exists in this matter under 28 U.S.C. § 1334(b). Because this is a claim allowance matter, it is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

---

1. Counsel for the Department stated that it was not the Department's practice to file late claims on the theory that the filing of a claim might operate as a waiver of the right of the Department to pursue claims for trust fund taxes (for example, unpaid withholding taxes for which the taxpayer was a responsible person) after the chapter 13 has been completed. As a consequence of its non-filing policy, other taxes for which no claim has been filed are normally written off. The claim filed in *Zimmerman* was submitted in derogation of this policy.

2. This relationship apparently became clear only when the Service attempted to levy upon the debtors' bank account to satisfy the Star–Con, Inc. liability.

## IV. *Hausladen.*

In *Hausladen* the Minnesota *en banc* decision addressed the exact issue which now confronts this court: "[W]hether a claim filed in a Chapter 13 case after the 90–day deadline set by Rule 3002(c) of the Federal Rules of Bankruptcy Procedure should be disallowed?" *Hausladen,* 146 B.R. at 558. That panel concluded that a claim filed after the 90–day deadline would not be disallowed. Instead, the court posited that the timeliness of a claim relates only to the claim's priority. These conclusions were derived from the Minnesota bankruptcy court's interpretation of § 502 of the Code. Section 502, "Allowance of claims or interest," states:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... and shall allow such claim ... except to the extent that—[the section continues by enumerating eight exceptions].

11 U.S.C. § 502. The Minnesota court focused closely upon the use of the word "except" used in § 502(b). The court stated that the eight enumerated items following the phrase "except to the extent that" are the only reasons a claim may be disallowed under the Code. Because lateness is not an enumerated ground, the court concluded that a claim may not be disallowed for that reason. *Hausladen,* 146 B.R. at 559.

The Minnesota court read FED. R.BANKR.P. 3002 to be consistent with its interpretation of § 502. *Hausladen,* 146 B.R. at 560, n. 5. Rule 3002 states:

(a) **NECESSITY FOR FILING.** An unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed....

(c) **TIME FOR FILING.** In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code....

The court stated that Rule 3002 does not explicitly require filing within the 90–day period for the claim to be allowed, although the court recognized that such an interpretation is implied by the rule. Therefore, it concluded, reading the rule to require filing within the 90–day period is erroneous:

This erroneous reading arose when the drafters of the new Rule 3002 hastefully copied the substance of *old* Rule 302 without paying any attention to the major change in the underlying statute. Under the Bankruptcy Act, late claims were explicitly disallowed. Section 57(n) of the Act provided that ... "[c]laims which are not filed within six months after the first date set for the first meeting of creditors *shall not be allowed*...." 11 U.S.C. § 93(n) (repealed Oct. 1, 1979) (emphasis added). The old Bankruptcy Rule implemented this time bar. However, a time bar does not expressly exist under the Code or Rules.

*Hausladen,* 146 B.R. at 559 (emphasis in original; footnote omitted).

The Minnesota court stated that the 90–day filing deadline established by Rule 3002 relates to the classification of claims as timely or tardy. This classification determines the priority of a claim. In support of its position the court pointed to § 726 of the Code which provides for the payment of tardily filed claims in a chapter 7 case. While acknowledging that no equivalent section of the Code exists in chapter 13, the court stated instead that the chapter 13 plan controls the treatment of tardily filed claims. *Id.* at 560. Although the court cited to no section of chapter 13 for this conclusion, it determined that its construction was supported by the unambiguous language of the statute. "When Congress speaks as clearly as it has done here, the plain meaning of the legislation is conclusive..." *Id.* at 558 (citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242–43, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)) In such cases, reference to "legislative history

and to pre-Code practice is not necessary." *Id.* at 558 (citing *Ron Pair*, 489 U.S. at 241, 109 S.Ct. at 1030).

The reasoning of *Hausladen* parallels the reasoning of two cases decided after the Code was enacted but before the current Federal Rules of Bankruptcy Procedure were promulgated. *See In re Corbett*, 27 B.R. 442 (Bankr.W.D.Mo.1983), *rev'd*, 68 B.R. 480 (W.D.Mo.1984); *In re Collins*, 33 B.R. 203 (Bankr.E.D.N.C.1983); *but see In re Pennetta*, 19 B.R. 794 (Bankr.D.Colo.1982); *In re Foster*, 11 B.R. 476 (Bankr.S.D.Cal.1981); *In re Walter*, 10 B.C.D. 791, 29 B.R. 449 (Bankr.S.D.N.Y. 1982) (late claims disallowed under old rule 13–302). During this transitional period, § 405 of the Reform Act of 1978 provided that the rules in effect when the Code became effective would continue to the extent the old rules were not inconsistent with the Code. These cases held that old Rule 13–302, which did not allow late claims, was inconsistent with § 502 of the Code. The Bankruptcy Court for the Western District of Missouri allowed late claims but stated that "[t]he Court recognizes the violence done to the plain language of the statute and rules but concludes that the policy of payment to creditors implicit in Chapter 13 cases is of overriding importance." *Corbett*, 27 B.R. at 444.

Courts ruling on the late filing of claims in chapter 13 cases in the wake of *Hausladen* have split on whether that case is correctly decided. Only two cases to date have been decided on similar facts. *General Motors Acceptance Corp. v. Judkins (In re Judkins)*, 151 B.R. 553 (Bankr.D.Colo. 1993), follows *Hausladen*, while *In re Bailey*, 151 B.R. 28 (Bankr.N.D.N.Y.1993) takes the opposite view. Other cases not involving the factual scenario now before the court have also cited *Hausladen* favorably. Two such cases decided in the context of late claims filed by the IRS in chapter 7 cases are *Lastra v. Blood Services Program of the American Red Cross (In re Corporacion de Servicios Medico–Hospitalarios de Fajardo, Inc.)*, 149 B.R. 746 (Bankr.D.P.R.1993), and *In re Rago*, 149 B.R. 882 (Bankr.N.D.Ill.1992). *In re Stoecker*, 151 B.R. 989 (Bankr.N.D.Ill.1993)

also involved a late claim filed by the IRS in a chapter 7 case but declined to follow *Hausladen's* reasoning. Other courts have cited *Hausladen* in passing but have failed to reach the *Hausladen* issue because of defects in the notice given to the creditor. *See Internal Revenue Service v. Barton (In re Barton)*, 151 B.R. 110 (Bankr. W.D.Mich.1993); *Internal Revenue Service v. Cole (In re Cole)*, 146 B.R. 837 (D.C.Colo.1992).

Because the *Hausladen* interpretation of § 502 has been critically analyzed by several other courts, much of the ground work for our decision has already been laid. Upon review of these cases, and, more importantly, the statute and legislative history, we respectfully conclude that *Hausladen* was wrongly decided. While we concur generally with the analysis set forth in the well-reasoned *Bailey* opinion, we find the *Hausladen* rationale flawed in two particular areas: its harmonization of § 502 and FED.R.BANKR.P. 3002, and its failure to grasp the semantic problem of describing a time-barred claim as "disallowed."

### V. The Interrelation of §§ 501, 502 and FED.R.BANKR.P. 3002.

Section 502 states that "[a] claim or interest, *proof of which is filed under section 501 of this title*, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a) (emphasis added). According to the Code, a prerequisite to being "deemed allowed" under § 502 is filing under § 501. Section 501, "Filing of proof of claims or interest," creates the substantive right to file a claim and identifies the parties holding that right. The merits of a claim will be analyzed under § 502 only if the claim meets § 501's requirements.

One procedural requirement § 501 contemplates is a time limit in which to file claims. Section 501(b) states that "[i]f a creditor does not *timely file* a proof of such creditor's claim, an entity that is liable to such creditor with the debtor ... may file a proof of such claim." Section 501(c) states that "[i]f a creditor does not *timely file* a proof of such creditor's claim, the debtor or the trustee may file a proof of

such claim." Thus, § 501 allows a creditor a specific period in which to file a claim and allows an entity that is liable to the creditor, or the debtor, or the trustee an additional period in which to file the claim if the creditor does not file within its contemplated period. Section 501 is explicitly silent as to the time limits in which to file and the penalty, if any, for not filing within the given time period. This void is filled by FED.R.BANKR.P. 3002, which specifies the time frame for claim filing and requires that claims be filed in accordance with its provisions. *Hausladen* and the instant cases turn upon the proper interpretation of this rule.

■ Federal court rules are promulgated under the authority of an enabling statute. The enabling statute for the federal rules of bankruptcy procedure gives the United States Supreme Court the power to promulgate rules which do "not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2071. Often, the Supreme Court will appoint an advisory committee to draft the rules. These rules are presented to Congress for passive acceptance and take effect if Congress does not strike a rule within a set time period after presentment. *Id.* A similar procedure exists for the federal rules of civil procedure. *See* 28 U.S.C. § 2072. Court rules are strongly presumed to be within the guidelines of their enabling statute because they are drafted by the judges who must rule on their validity. *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 85 S.Ct. 1136, 11, 14 L.Ed.2d 8 (1965). Moreover, the rules are presumed to reflect Congress's intent because Congress acquiesces to their acceptance. *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14–15, 61 S.Ct. 422, 427, 85 L.Ed. 479 (1941).

■ More fundamentally, because of the rigorous adoption process there is a strong presumption that the rules correctly reflect the dichotomy between substantive law and procedural law. This distinction has historically proved troublesome because procedural rules often have substantive outcomes. For example, a failure to timely file an answer in a civil case may result in

a default. While the default is procedurally mandated, the outcome of a default judgment against the defendant is most definitely substantive. The federal courts have wrestled with this conundrum since the enactment of the Federal Rules of Civil Procedure in 1938 and the Supreme Court's decision that same year of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When the Supreme Court decided the *Hanna* case it intended to put to rest the practice of invalidating procedural rules where they overlapped into matters that were arguably substantive, except in the most compelling cases:

> When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.

*Hanna*, 380 U.S. at 471, 85 S.Ct. at 1144. More recently the Court reaffirmed this holding in *Burlington N. Railroad v. Woods*, 480 U.S. 1, 6, 107 S.Ct. 967, 970, 94 L.Ed.2d 1 (1987):

> [T]he study and approval given each proposed Rule by the Advisory Committee, the Judicial Conference, and the Court, and the statutory requirement that the Rule be reported to Congress for a period of review before taking effect, see 28 U.S.C. § 2072, give the Rules presumptive validity under both the constitutional and statutory constraints.

■ While *Erie* and its progeny generally dealt with the conflict between federal procedure and state law, the same principles apply where a court is called upon to consider the validity of a federal rule of bankruptcy procedure. This is so because of 28 U.S.C. § 2071's directive that the rules not alter or abridge substantive rights, thus according rights acquired under federal statute the same status as the state law rights considered in *Erie*. As stated in 19 CHARLES A. WRIGHT, ARTHUR R.

MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4509 at 147 (1982):

> By virtue of this process, the Rules, once they have become effective, carry a presumptive validity: any possible intrusions upon substantive rights presumably have been thoroughly considered; whatever balancing is required between procedural objectives and substantive policy concerns, it may be assumed, already has been done.

The relationship between § 502 and FED. R.BANKR.P. 3002 evidences this substantive/procedural balancing. The enumerated grounds for denying allowance of a claim under § 502(b) are addressed to what has typically been considered substantive matters. By contrast, FED.R.BANKR.P. 3002 concerns itself with the procedure which must be followed in filing a claim. It is concerned with the time and place of filing but is silent as to the substantive aspects of the claim. This complementary interpretation of § 502 and FED.R.BANKR.P. 3002 is mandated by the presumption that the drafters of the rules did not intend to nor did they make substantive law when FED.R.BANKR.P. 3002 was enacted.

It is upon this point that *Hausladen* commits its first error. In order to reach the conclusion that it did, the *Hausladen* court had to deal with the language of FED. R.BANKR.P. 3002, which quite clearly poses a time bar against the late filing of claims. It could do this by either invalidating the rule or reading the time bar out of the rule. It chose to do the latter, concluding that FED.R.BANKR.P. 3002 was "hastefully" drawn from the text of the former Rule 302, and therefore contained language which pertained to a timeliness requirement in § 57 of the Bankruptcy Act, which found no counterpart in the Code. This conclusion ignores the legislative history, which clearly establishes an intent to place substantive considerations in the Code and procedural considerations in the Rules.

The legislative history of § 501 explicitly recognized that the task of setting time limits would fall to the Bankruptcy Rules and further envisioned those time limitations as constituting a bar to the filing of late claims: [3]

> *The Rules of Bankruptcy Procedure will set the time limits, the form, and the procedure for filing, which will determine whether claims are timely or tardily filed.* The [former] Rules governing time limits for filing proofs of claims will continue to apply under section 405(d) of the bill. These provide a six-month *bar date* for the filing of claims.

H.R.REP. No. 595, 95th Cong., 1st Sess. 351 (1977); S.REP. No. 989, 95th Cong., 2d Sess. 61 (1978) U.S.Code Cong. & Admin.News pp. 5787, 5847, 6307 (emphasis added). As the foregoing passage demonstrates, Congress envisioned the procedural aspects of claims filing being governed by the Bankruptcy Rules, not the Code.

Despite the clear language of both the legislative history and FED.R.BANKR.P. 3002, the *Hausladen* court attempted to harmonize the rule and § 502 by stating that a bar date was not stated but was merely implied by the rule. From this it concluded that "a time bar does not expressly exist under the Code or Rules." *Hausladen*, 146 B.R. at 559. This is true only under the most strained reading of the rule, which states only claims filed in accordance with the rule (*i.e.* timely claims) may be allowed. We agree with the *Bailey* court, which in reference to this interpretation of FED.R.BANKR.P. 3002, stated:

> With all due respect to that observation the plain reading of FED.R.BANKR.P. 3002(a) requires this Court to reach the conclusion that that Rule emphatically

---

**3.** The court is aware that legislative history may be resorted to only when a statute is ambiguous. *See Ron Pair*, 489 U.S. at 242–43, 109 S.Ct. at 1030–31. It is this court's position that §§ 501 and 502, *when read in conjunction with FED. R.BANKR.P. 3002*, are not ambiguous. However, to the extent that the bar date is read out of FED.R.BANKR.P. 3002, as was done by the *Hausla-* *den* court, the statute becomes ambiguous, as § 501 contemplates consequences for late filing but fails to identify those consequences. This court therefore does not rely upon the legislative history for its interpretation of the statute and rules, which are clear on their face; however, we do rely upon the legislative history in our critique of *Hausladen*.

requires the filing of a proof of claim within the period prescribed under FED. R.BANKR.P. 3002(c) as a condition precedent to allowance.

*Bailey,* 151 B.R. at 31, fn. 2. While FED. R.BANKR.P. 3002 does not explicitly state that late claims are barred, it does make timely filing a prerequisite to allowance. *Hausladen's* attempt to ignore this aspect of the rule flies in the face of the rule's presumptive validity.

### VI. The Semantics of § 502 and FED.R.BANKR.P. 3002.

■ The second error which the *Hausladen* court made resulted from an unfortunate double meaning which bankruptcy courts and practitioners commonly attach to the term "disallowed." Although that term appears nowhere in § 502, it is common to describe a claim that falls within § 502(b)'s enumerated exceptions as being "disallowed." Likewise, that term has been used with respect to claims that cannot be allowed because they are not filed "in accordance with" FED.R.BANKR.P. 3002. However, the process of claims allowance involves several steps, and "disallowance" under these two provisions describes different events. The first step in the process is filing a claim. The substantive rights of various parties to file claims are found in § 501; the procedure for doing so is located in FED.R.BANKR.P. 3002. Once filing is accomplished, the substance of the claim is considered under § 502. A claim may not be allowed because of defects at any of these steps. *Hausladen,* however, collapses the process into a single step:

> Section 502 ... sets out eight specific grounds for disallowing claims. Tardy or late filing is not one of them. The statute says what the statute means: "the court ... *shall allow* ... claim[s] ... except ..." 11 U.S.C. § 502(b) (emphasis added). The words are clear; "lateness is not a ground for disallowance under section 502 of the Code." *In*

re *Horner,* 1991 WL 353297 (Bankr. N.D.Ill. Sept. 21, 1991) (dicta); J. Keith M. Lundin, *Chapter 13 Bankruptcy,* § 7.24 at 7–59 (Sept. 1992 galley proof). *Hausladen,* 146 B.R. at 559. This statement is accurate to the extent it describes the decision-making process under the specific provisions of § 502. But, like an answer to a complaint, whether a claim is eligible to be considered under § 502 at all depends upon its proper and timely filing. The use of the term "disallow" in the context of both the procedural test in FED. R.BANKR.P. 3002 and the substantive test in § 502 glosses over this fact.

Another term frequently employed with regard to late claims is the word "bar." This is perhaps more accurate when referring to late claims, as the effect of FED. R.BANKR.P. 3002 is to prevent the claim from moving forward in the process toward treatment under § 502.[4] *Hausladen,* however, rejects this term:

> All of this has been compounded by attorneys, judges and commentators who have carried forward the old Act habit of referring to the date set for filing claims as the "bar date." Under Section 57(n) of the Act it was a bar date; however under Section 502 of the Code it is not. Continued mischaracterization of the time period has led to reliance on the words themselves without actually understanding them or what the statute actually says.

*Id.* Ironically, the confusion to which *Hausladen* alludes is the result not of the use of the term "bar date" to refer to the treatment of late claims under FED. R.BANKR.P. 3002, but rather the overbroad use of the term "disallow." *Hausladen* implicitly presumes that barring a claim as untimely, and thus preventing it from ever being "deemed allowed" under § 502(b), is the equivalent of "disallowing" the claim under § 502(b). This presumption is supported neither by statute nor court rule. While neither the statute nor rule contains

---

**4.** The *Bailey* court's entry in this verbiage derby is the word "expunge." 151 B.R. at 32. With due respect, we do not find this term entirely satisfactory, either. "Expunge" carries with it the connotation that the claim will be removed from the court record, which is not accurate. The late filed claim will remain on the docket; it is merely ineffective as a claim because it cannot move forward toward allowance under § 502.

the term "bar date," the same is true of the word "disallow." Both terms are used by practitioners and courts as a shorthand to describe what happens under these various provisions.[5] By using the term "bar" in the FED.R.BANKR.P. 3002 context and the term "disallow" in the § 502 context, the confusion which led in *Hausladen* to the blurring of a rule of procedure with the substantive provisions of § 502 can be avoided. This court adopts this practice.

### VII. Policy Considerations.

Our holding that FED.R.BANKR.P. 3002(c) imposes a bar date against late claims is based upon the plain language of the statute. However, an examination of the underlying policies of FED.R.BANKR.P. 3002 will show that this Court's interpretation of the statutory language and court rule is completely in harmony with the legislative intent, satisfying *Ron Pair's* requirement that the plain language of the statute be applied unless it is blatantly at odds with statutory intent.

Policy considerations strongly support the necessity of a bar date in bankruptcy reorganizations. As stated by the court in *In re Nohle*, 93 B.R. 13, 15 (Bankr. N.D.N.Y.1988):

> Bankr.R. 3002(c) is strictly construed as a statute of limitations since the purpose of such a claims bar date is "to provide the debtor and its creditors with finality" and to "insure the swift distribution of the bankruptcy estate." *See In re Johnson*, 84 B.R. 492, 494 (Bankr.N.D.Oh. 1988) [other citations omitted].

Although *Nohle* was decided in the chapter 12 context, the policy is equally applicable in chapter 13. A bar date is necessary so that a reorganization plan may more easily be formulated. Furthermore, a plan can only be administered after all claims against the estate have been filed. In chapter 13 cases, once the claims have been filed, the parties can determine with certainty the dividend percentage to be paid to holders of allowed unsecured claims. In some cases, application of the 11 U.S.C. § 1325 confirmation standards would be impossible if the calculations were subject to change due to the filing of late claims. Calculations involving plan distributions would be extremely difficult even if late claims were paid less than other claims because the late claims would still be taking something away from the timely filed claims. The debtor and all timely filing creditors benefit from the claims bar date because the case can be administered much more efficiently. On the other hand, no injustice results by barring late claims of unsecured creditors who have timely notice of the bar date.[6]

### VIII. Conclusion.

The only defense raised by the Department to the debtor's objection in the *Zimmerman* case was *Hausladen*. Accordingly, under 28 U.S.C. § 157(b)(1) the court may enter a final order as to this case. Having not been persuaded by the reasoning in that case, the debtor's objection is sustained, and an appropriate order will enter. In the *Neuman* case, the *Hausladen* defense was raised concomitantly with other factual defenses. Accordingly, no order will enter in the *Neuman* case at this time. Instead, the court will schedule an additional evidentiary hearing on the debtors' objection to the Service's claim. For the purposes of that hearing, this opinion will control as to the legal issues raised in the *en banc* hearing.

JAMES D. GREGG, Bankruptcy Judge, concurring.

I agree with the *en banc* decision. The Bankruptcy Code and Rules must be harmonized unless it is impossible to do so.

---

**5.** The Supreme Court has referred to the timely claims allowance deadline as the "bar date" in the chapter 11 context. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, —— U.S. ——, ——, 113 S.Ct. 1489, 1492, 123 L.Ed.2d 74 (1993).

**6.** This result does not effect unsecured creditors who do not have notice of the bar date. The Sixth Circuit has stated that the claims of unsecured creditors who do not have notice of the bar date could not be disallowed because disallowance would result in an unconstitutional taking of their property. *IRS v. Century Boat Co. (In re Century Boat Co.)*, 986 F.2d 154 (6th Cir.1993); *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1091 (6th Cir.1990); *see also Barton, supra.*

"Statutory construction ... is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme...." *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (citations omitted). Section 506(d) of the Bankruptcy Code refers both to sections 501 and 502.[1] Congress made a distinction between a claim being "disallowed" pursuant to section 502 and "not ... allowed" pursuant to section 501. Further, in section 506(d)(2), Congress stated a claim may not be an allowed claim "due only to the failure of any entity to file a proof of such claim under section 501 of this title." *Hausladen* fails to give appropriate analytical weight to section 501 and totally ignores section 506(d). Reading all Code sections together mandates that an untimely claim (as procedurally defined in the Bankruptcy Rules) shall not be allowed; such a claim is "barred".

The Supreme Court has also recently addressed untimely filed claims in a case involving the "excusable neglect" exception. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In *Pioneer Investment*, the Court held a late filed proof of claim in a chapter 11 case may be allowed under certain circumstances by reason of "excusable neglect" under Bankruptcy Rule 9006(b)(1). *Id.* at ——, 113 S.Ct. at 1492. In its discussion, albeit *dicta*, the Court noted that the "excusable neglect" exception is restricted by the Bankruptcy Rules. "Subsections (b)(2) and (b)(3) of [Bankruptcy] Rule 9006 enumerate those time requirements excluded from the operation of the 'excusable neglect' standard. One of the time requirements listed as excepted in Rule 9006(b)(3) is that governing the filings of proofs of claim in Chapter 7 cases. *Such filings are governed exclusively by Rule 3002(c)."*

---

**1.** Section 506(d) of the Bankruptcy Code states:

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

*Id.* at ——, 113 S.Ct. at 1495 n. 4 (emphasis supplied).

Bankruptcy Rule 3002 is not limited to chapter 7 cases. It governs chapter 12 and chapter 13 as well. Therefore, filing of chapter 13 claims is also "governed exclusively by Rule 3002(c)." The Supreme Court has sent a strong signal that the Bankruptcy Rule-imposed claims filing deadline, or "bar date", must be enforced. Following *Hausladen* renders section 501 of the Bankruptcy Code and Bankruptcy Rule 3002 meaningless. I decline to do so.

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.