In re CARRILLO, Miguel Antonio, Carrillo, Carolyn Marie, Debtors.

**Bankruptcy No. 96–05178–R.**

United States Bankruptcy Court, N.D. Oklahoma.

Dec. 1, 1997.

Ty Stites, Tulsa, OK, for Debtor.

David Hopper, Oklahoma City, OK, for Oklahoma Employment Security Commission.

## ORDER GRANTING DEBTOR'S OBJECTION TO PROOF OF CLAIM OF OKLAHOMA EMPLOYMENT SECURITY COMMISSION

DANA L. RASURE, Chief Judge.

On April 22, 1997, Miguel Antonio and Carolyn Marie Carrillo (collectively, the "Debtors") filed an Objection to Proof of Claim of Oklahoma Employment Security Commission (the "Objection"). On May 21, 1997, the Oklahoma Employment Security Commission ("OESC") filed its Response to the Objection (the "Response"). On September 23, 1997, the Debtors filed their Brief in Support of the Objection. On September 25, 1997, a hearing on the Objection was held. Upon consideration of the pleadings, briefs, arguments of counsel and relevant legal authority, the Court finds as follows:

### STATEMENT OF FACTS

On August 22, 1990, Debtors filed a Chapter 13 Petition in this Court in Case No. 90–02432–C (the "First Case"). OESC was a scheduled creditor and was listed on the official mailing matrix. On November 5, 1990, Debtors filed a Chapter 13 Plan. The terms of the Chapter 13 Plan provided that "[i]n order to share in any payment from the estate all creditors must file a proof of claim not later than December 18, 1990." On April 27, 1991, more than four (4) months after the deadline to file claims had expired, OESC filed its proof of claim (the "First Proof of Claim"). On August 4, 1992, the Debtors filed their Second [Amended] Chapter 13 Plan, and on August 13, 1992, the Debtors filed their Third [Amended] Chapter 13 Plan. The Second and Third Plans each provided that "[c]reditors who fail to file a timely claim with the bankruptcy court clerk shall not receive any distribution under this plan unless otherwise ordered by the court." On October 17, 1992, more than two (2) years after the First Case was commenced, the Court confirmed the Third Chapter 13 Plan (the "Confirmed Plan"). The Order Confirming Chapter 13 Plan provided that "all

claims will be treated as set forth in the attached SCHEDULE OF PAYMENTS and that all claims which are not otherwise specifically classified in said SCHEDULE OF PAYMENTS are determined to be General Unsecured Claims in this case." The Order also provided that "creditors who failed to file claims within the time set by the bankruptcy court clerk shall not receive any distribution under the plan." OESC did not appeal the Order Confirming Chapter 13 Plan. On February 16, 1996, an Order Discharging Debtor After Completion of Chapter 13 Plan was filed in the First Case.

On December 16, 1996, Debtors filed a second Chapter 13 Petition in this Court in Case No. 96–05178–R (the "Second Case"). On April 17, 1997, OESC filed its proof of claim. In their Objection, Debtors contend that any claim of OESC was discharged on February 16, 1996. In its Response, OESC contends that its First Proof of Claim constituted a priority claim under Section 507(a)(8)(D) of the Bankruptcy Code and that because such claim was not "provided for" in the First Case, the claim was not discharged.

## CONCLUSIONS OF LAW

■■■ "A properly filed proof of claim is prima facie evidence of the validity and amount of the claim." *In re Harrison,* 987 F.2d 677, 680 (10th Cir.1993); *see also* Fed. R. Bankr.P. 3001(f). A party who objects to the claim must bring forward evidence equal in probative force to that underlying the proof of claim. *See In re Simmons,* 765 F.2d 547, 552 (5th Cir.1985). Only then is the ultimate burden of persuasion with the proponent of the proof of claim. *See Harrison,* 987 F.2d at 680. Therefore, it is OESC's burden to prove that its claim was a priority claim that was not discharged in the First Case.[1]

---

**1.** Paragraph 10 of the First Proof of Claim provides that: "[t]his claim is a general unsecured claim, except to the extent that the security interest, if any, described in paragraph 9 is sufficient to satisfy the claim [If priority is claimed, state the *amount* and *basis* thereof.]" (emphasis added). OESC's first contention is that the First Proof of Claim was a "priority" claim. Debtors contend that the First Proof of Claim was a

■ OESC filed its First Proof of Claim more than four (4) months after the deadline. In determining whether untimely filed claims may be allowed, Sections 501 and 502 of the Bankruptcy Code and Bankruptcy Rule 3002 must be examined. Section 501 provides that a creditor *may* file a proof of claim. There is no requirement in Section 501 that a creditor must file a proof of claim. Section 502(a) provides for the allowance of claims or interests as follows:

A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.

11 U.S.C. § 502(a). Therefore, a creditor must file a proof of claim in order for a claim to be allowed. When Sections 501 and 502 are read together, it can be argued that filing a claim is not optional. Such a reading is supported by Rule 3002 which provides:

(a) **Necessity for Filing.** An unsecured creditor or an equity security holder **must** file a proof of claim or interest for the claim or interest to be allowed . . .

\*   \*   \*   \*   \*   \*

(c) **Time for Filing.** In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code, except as follows:

(1) A proof of claim filed by a governmental unit is timely filed if it is filed not later than **180 days** after the date of the order for relief. On motion of a governmental unit before the expiration of such period and for cause shown, the court

general unsecured claim. Section 507(a)(8)(D) of the Bankruptcy Code provides that employment taxes shall receive eighth priority in a bankruptcy proceeding. Although it is not evident from the proof of claim that OESC asserted a priority claim, the provisions of the Code cannot be ignored. Accordingly, the claim asserted by OESC was a priority claim.

may extend the time for filing of a claim by the governmental unit.

Fed. R. Bankr.P. 3002 (emphasis added).

Because Rule 3002 mandates a time limit during which claims must be filed, but the Bankruptcy Code does not expressly impose such a limit, bankruptcy courts are divided on the issue of allowance of untimely filed claims. Some courts have disregarded Rule 3002's limits and allowed untimely filed claims. At one end of the spectrum of cases is *In re Hausladen*, 146 B.R. 557 (Bankr. D.Minn.1992). In *Hausladen*, the court held that failure to file a claim within 90 days after the first date set for the meeting of the creditors as required by Rule 3002 was not fatal to the allowance of a Chapter 13 claim. The court reasoned that Rule 3002 was copied hastily from the former Bankruptcy Rule 302 [2] which mandated a time limit for filing claims, thereby causing a discrepancy between the Code and the Rules. The court concluded that Rule 3002 does not explicitly say, but only implies, that filing within the prescribed period is a prerequisite to allowance. Accordingly, the court held that because there was no express time bar in the Code or the Rules, the late claim should be allowed. *Id.* at 559.

The *Hausladen* decision has been criticized by several courts. The court in *In re Zimmerman*, 156 B.R. 192 (Bankr.D.Mich. 1993), held that late claims in Chapter 13 cases should not be allowed, finding that Sections 501 and 502 and Rule 3002 must be read together. The court held that:

According to the Code, a prerequisite to being "deemed allowed" under § 502 is filing under § 501. Section 501 ... creates the substantive right to file a claim and identifies the parties holding that right. The merits of a claim will be analyzed under § 502 only if the claim meets § 501's requirements.

One procedural requirement § 501 contemplates is a time limit in which to file claims.... Section 501 is explicitly silent as to the time limits in which to file and the penalty, if any, for not filing within the given time period. This void is filled by [Bankruptcy Rule] 3002, which specifies the time frame for claim filing and requires that claims be filed in accordance with its provisions.

*Id.* at 195–96.

The *Zimmerman* court also noted that policy considerations support the finding that late claims should be disallowed under Section 502, concluding that Rule 3002(c) "is strictly construed as a statute of limitations since the purpose of such a claims bar date is 'to provide the debtor and its creditors with finality' and to 'insure the swift distribution of the bankruptcy estate.'" *Id.* at 199, quoting *In re Nohle*, 93 B.R. 13, 15 (Bankr. N.D.N.Y.1988) (other citations omitted).

Other courts have reached the same conclusion as the *Zimmerman* court. For example, in *In re Johnson*, 156 B.R. 557 (Bankr.N.D.Ill.1993), the court determined that Rule 3002 gives effect to Section 501 and creates a procedural bar to filing. *Id.* at 559. *See also United States v. Chavis* (*In re Chavis*), 47 F.3d 818, 824 (6th Cir.1995) (all unsecured creditors, including the Internal Revenue Service, seeking payment under a Chapter 13 plan must file their claims on a timely basis); *United States v. Clark*, 166 B.R. 446, 448 (D.Utah 1993) (timely filing of claim is a condition precedent to allowance under Section 502); *In re Parr*, 165 B.R. 677, 681 (Bankr.N.D.Ala.1993) (untimely claims by creditors with notice of Chapter 13 debtor's bankruptcy and of bar date for filing proofs of claim were nullities, not deemed allowed, and effectively disallowed);[3] *In re Wilson*, 90 B.R. 491 (Bankr.N.D.Ala.1988).

---

**2.** "Under the Bankruptcy Act, late claims were explicitly disallowed. Section 57(n) of the Act provided that ... '[c]laims which are not filed within six months after the first date set for the first meeting of the creditors shall not be allowed....' 11 U.S.C. § 93(n) (repealed Oct. 1, 1979). The old Bankruptcy Rule implemented this time bar. The Advisory Committee Note to Rule 13–302(e)(2) explains that the language 'of subdivision (e) is adopted from § 57(n) of the Act

and retains the time limits on the filing of claims established by the statutory provisions.'" *Hausladen*, 146 B.R. at 559.

**3.** The court also quoted legislative history providing that "unless a claim is listed in a chapter 9 or chapter 11 case and allowed as a result of the list, a proof of claim will be a prerequisite to allowance for unsecured claims, **including priority claims** and the unsecured portion of a claim

The deadline for filing a proof of claim in the First Case was December 18, 1990. OESC filed its First Proof of Claim on April 27, 1991, clearly outside the 180–day time limit imposed upon governmental units by Rule 3002. Although there is no consensus in the case law as to whether an untimely claim should be allowed, this Court follows the line of bankruptcy cases that hold that proofs of claim must be filed within the time limits set forth in Rule 3002, and if claims are not timely filed, they will be disallowed.[4]

The legislative history to Section 501 supports this conclusion. The House and Senate Reports provide:

> [Section 501(a) ] is permissive only, and does not require filing of a proof of claim by any creditor. It permits filing where some purpose would be served such as .... where there will be a distribution of assets to holders of allowed claims.... The Rules of Bankruptcy Procedure and practice under the law will guide creditors as to when filing is necessary and when it may be dispensed with. In general, however, unless a claim is listed in a chapter 9 or chapter 11 case and allowed as a result of the list, a proof of claim will be a prerequisite to the allowance for unsecured claims. The Rules of Bankruptcy Procedure will set the time limits, the form, and the procedure for filing, which will determine whether claims are timely or tardily filed.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 351 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6307; S.Rep. No. 989, 95th Cong., 2d Sess. 61, reprinted in 1978 U.S.C.C.A.N. 5787, 5847.[5]

Furthermore, since the filing of the First Case in 1992, Section 502 was amended to specifically disallow late-filed proofs of claim in Chapter 11, 12, and 13 cases in order to reconcile the disparate decisions among the courts as to whether late filed claims are or are not allowed. As a result of the amendment in 1994, it became clear that untimely filed proofs of claim should not be allowed under Section 502.[6]

OESC asserts that its First Claim should have been allowed, even if untimely, because the Debtors did not object. An initial reading of Section 502 would seem to support this contention. However, this Court has already determined that there is a procedural requirement imposed by Rule 3002 that mandates that a claim be filed within the time limits prescribed before a claim will be allowed under Section 502. The Confirmed Plan provided that claims filed after the deadline would not receive any payments. Because OESC did not meet this time limit, the First Claim was disallowed. The Debtors were not required to file an objection.

OESC relies on *In re Escobedo*, 28 F.3d 34 (7th Cir.1994), which holds that if a plan does not provide for a priority claim, the plan cannot be confirmed and has no res judicata effect as to the omitted claim. *Escobedo* is distinguishable from this case, however, because the creditor in *Escobedo* had met the procedural requirement of Section 502 by timely filing its claim, which OESC did not do.

---

asserted by the holder of a lien." *Parr*, 165 B.R. at 681 (emphasis added) (citations omitted).

**4.** This position is also supported by the United States Supreme Court decision in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), which holds that the only situation in which an untimely filed claim will be allowed is if there is a showing of excusable neglect on the creditor's part. There was no such showing of excusable neglect by OESC.

**5.** Other courts have also examined the legislative history before deciding this issue. For example, in *Zimmerman*, the court determined, "[t]he legislative history of § 501 explicitly recognized that the task of setting time limits would fall to the Bankruptcy Rules and further envisioned those time limitations as constituting a bar to the filing of late claims." *Zimmerman*, 156 B.R. at 197. The *Wilson* court also examined the legislative history and determined that "it is made clear that § 501 was drafted with the intention by Congress that procedural matters—including when it would be permissible or impermissible for a creditor to file a proof of the creditor's claim—would govern a creditor's exercise of the permission given in § 501 that a creditor 'may file a proof of claim.'" *Wilson*, 90 B.R. at 494.

**6.** The amendment is not applicable to this case, however, since it was not in effect when the First Proof of Claim was filed.

] Even if the First Claim was not time barred, the record indicates that the First Claim would have been discharged in the First Case. Although OESC argues that it asserted a priority claim at all times, OESC had notice that its claim was not being treated as a priority claim in the Confirmed Plan. Throughout the two year confirmation process of the First Case, OESC received three Amended Chapter 13 Plans as well as notices of all the confirmation hearings. When a creditor receives notice about a bankruptcy proceeding, the creditor is under constructive or inquiry notice that its claim may be affected. *In re Gregory,* 705 F.2d 1118, 1123 (9th Cir.1983). OESC received ample notice that it was being treated as a general unsecured creditor, yet it never objected to the proposed plans.

Section 1327(a) of the Bankruptcy Code provides that:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327(a). A confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation. *See In re Szostek,* 886 F.2d 1405, 1408 (3d Cir.1989). OESC had the opportunity to object to confirmation, but failed to do so and allowed the Confirmed Plan to be entered. It cannot now collaterally attack its treatment as a general unsecured creditor in the Confirmed Plan. The Confirmed Plan is binding on OESC.

OESC claims that the Confirmed Plan could not have discharged its debt because OESC was not "provided for" pursuant to section 1328(a) which provides:

> As soon as practicable after completion by the debtor of all payments under the plan ... the court shall grant the debtor a discharge of all debts provided for by the plan or **disallowed under section 502 of this title** ...

11 U.S.C. § 1328(a)(emphasis added).

Because the First Claim was untimely, it was disallowed under Section 502, and was therefore discharged by virtue of Section 1328(a). Even if this Court determined that the untimely claim could be allowed, however, OESC's claim would have been discharged upon the completion of the Confirmed Plan in the First Case because it was deemed provided for by the Confirmed Plan as a general unsecured claim. Accordingly, OESC has no claim in the Second Case. Debtor's Objection to Proof of Claim of OESC is **GRANTED.**

**IT IS SO ORDERED.**