**In the Matter of Larry Wayne KECK, Sheila Mae Keck, Debtors.**

**Bankruptcy No. 91–40439.**

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

Oct. 4, 1993.

David A. Rosenthal, Lafayette, IN, Trustee.

Robin Morlock, Dyer, IN, for the IRS.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

The debtors filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on July 3, 1991. The court then issued a notice setting the last day for filing claims in the case as November 12, 1991. The Internal Revenue Service (IRS) filed a proof of claim for both a priority and a general unsecured claim on February 3, 1993. The matter is before the court on the trustee's objection to the IRS' proof of claim.

In their schedules, the debtors listed the IRS as a priority and a general unsecured creditor. They then filed a proposed plan that called for:

(a) Full payment in deferred cash payments of all claims entitled to priority under 11 U.S.C. § 507; and

\* \* \* \* \* \*

(c) ... dividends to unsecured creditors whose claims are duly allowed as follows: all unsecured creditors paid 100% in a pro rata share.

To fund the plan's obligations, the debtors committed themselves to paying $1,500.00 a month, for thirty-six months, to the Chapter 13 trustee. Neither the IRS nor any other creditor objected to the plan and it was confirmed on September 19, 1991.

As of the date the debtors filed their petition, they had not yet filed a federal income tax return for 1990. They filed this return on September 30, 1992. The IRS assessed their tax liability on December 14, 1992 and filed a proof of claim for these taxes, plus penalties and interest, on February 3, 1993. The trustee then objected to the claim as untimely.

The trustee, the IRS, and the debtors, who are present in support of the trustee's objection, have stipulated that two issues [1] exist in this case:

(1) Whether the debtors and trustee are bound by the terms of the plan to pay the claims of the IRS, whether or not the IRS timely filed a proof of claim; and

(2) Whether filing a proof of claim beyond the date established by Federal Rule of Bankruptcy Procedure 3002 is a reason to disallow a claim.

If the court rules against the IRS on these issues, the parties have agreed to reserve the issue of whether the IRS' claim should be allowed for equitable or other reasons.

■ The main issue in this case and an issue which has received considerable attention recently, from several courts, is whether a proof of claim must be timely filed in order for the claim to be allowed. Before addressing that issue, however, the IRS argues that the plan provides that its claim must be paid regardless of whether or not it filed a timely proof of claim. The IRS bases this argument on the fundamental proposition that a confirmed Chapter 13 plan binds both the debtor and creditors to its terms. 11 U.S.C. § 1327(a). *See also Matter of Pence*, 905 F.2d 1107, 1110 (7th Cir.1990). The IRS argues that the plan calls for payment of all priority and unsecured *claims*, not proofs of claim. Since "claims" are, by definition, a "right to payment," 11 U.S.C. § 101(5), and the IRS has a right to payment; it argues that it should be paid regardless of when it filed proof of that claim.

■ The IRS is correct that the confirmed plan is binding. It is not correct, however,

---

1. A third issue stipulated to by the parties is dependant upon the IRS' claim being allowed and, given this decision, is moot.

when it argues that, since the plan speaks in terms of claims, the filing of a proof of claim has no significance. The plan does not speak merely of claims; it speaks of *allowed* claims. Whether a claim is allowed is a function of 11 U.S.C. § 501 and § 502 and Bankruptcy Rule 3002. These provisions do deal with the timely filing of proofs of claim.

The IRS seems to be confused by the plan's wording, which calls for payments to "Holders of *allowed* secured claims" and "dividends to unsecured creditors claims whose claims are duly *allowed*," but "full payment . . . of all claims entitled to priority under 11 U.S.C. § 507" (emphasis added). To the IRS, the failure to use the word "allowed" in the plan when referring to priority claims seems to imply that the qualification of allowance is immaterial in paying priority claims. This is not true. A claim is "entitled to priority under 11 U.S.C. § 507" only if it is an "allowed" claim. *See e.g.* 11 U.S.C. § 507(a)(7) ("*allowed* unsecured claims of governmental units" have priority) (emphasis added). Allowance, therefore, is a critical prerequisite to priority status. Unless a claim is first allowed, it cannot be given any priority.[2]

Before the IRS can have a priority or an unsecured claim that the plan says will be paid, that claim must first be allowed. The ultimate issue then is how the late filing of its proof of claim affects the allowance of those claims under Chapter 13 of the United States Bankruptcy Code.

■ Courts have long assumed that any claim evidenced by a proof of claim filed after the date established by the applicable Bankruptcy Rules was disallowed or time-barred. This assumption primarily arises from pre-Code bankruptcy practice where the untimely filing of a proof of claim was specifically a ground for disallowing the claim. 11 U.S.C. § 93(n) (repealed October 1, 1979) (§ 57 of the Bankruptcy Act). Despite the fact that it was not listed as such a ground under the present Code, *see* 11 U.S.C. § 502(b), courts assumed that the untimely filing of a proof of claim was still a reason to disallow the underlying claim.

This assumption has been strongly challenged by a recent line of cases originating with *In re Hausladen*, 146 B.R. 557 (Bankr. D.Minn.1992), decided en banc by the bankruptcy judges of the state of Minnesota. That court concluded that barring claims as untimely was an improper extension of the Bankruptcy Act's procedures into the present Code. It held that, pursuant to § 502(b), only eight reasons exist for disallowing a claim and untimeliness is not one of them. As soon as a proof of claim is filed, they concluded the claim is allowed, by virtue of § 502(a), unless it can be disallowed under § 502(b). The court interpreted § 501 as merely describing who may file a claim. Any implication drawn from Rule 3002(a) or 3002(c), which effectuates § 501, that a proof of claim filed after the required date is disallowed as untimely or is barred, was viewed as an erroneous reading based upon the unfortunate copying of former Bankruptcy Rule 13–302 into present Bankruptcy Rule 3002.

For the *Hausladen* Court, the problem associated with untimely claims is a matter to be addressed in the plan, which may make a distinction between late and timely claims. The plan may treat them equally or may provide that (a) late claims be paid after timely claims, (b) late claims not be paid at all, or (c) late claims be paid at a different percentage. Several courts have followed this reasoning. *In re Babbin*, 156 B.R. 838 (Bankr.D.Colo.1993); *In re Judkins*, 151 B.R. 553 (Bankr.D.Colo.1993); *In re Rago*, 149 B.R. 882 (Bankr.N.D.Ill.1992).

The bankruptcy judges for the Western District of Michigan, also sitting en banc, considered the same issue in *In re Zimmerman*, 156 B.R. 192 (Bankr.W.D.Mich.1993), and came to the opposite conclusion. *See*

---

**2.** The IRS also argues that the plan, at paragraph (c), is ambiguous in terms of whether it calls for payment only to unsecured creditors with allowed claims or to all unsecured creditors, regardless of allowance, because the typed-in portion of that paragraph does not make a distinction between unsecured creditors with allowed and not allowed claims. The court disagrees. No ambiguity exists when the entire paragraph is taken as a whole. The unsecured creditors referred to in the typed-in section are those which have duly allowed claims as required by the pre-printed portion.

*also In re Johnson,* 156 B.R. 557 (Bankr. N.D.Ill.1993); *In re Bailey,* 151 B.R. 28 (Bankr.N.D.N.Y.1993). They determined that untimeliness is a basis for not allowing a proof of claim. The *Zimmerman* Court concluded that the deadline of Rule 3002(c) was established as a procedural rule, designed to give effect to § 501. An untimely filing prevented the claim from being "a claim ...., proof of which is filed under section 501", *see* 11 U.S.C. § 502(a), and, therefore, prevented the claim from being considered under § 502(b). The *Johnson* Court essentially agreed, adding that Congress specifically meant the Rules to cover all procedural matters previously found in the Act, including the time limitations for filing proofs of claim. *Johnson* also noted that *Hausladen* seemed to blur the distinction between a proof of claim and the claim itself.

Both of these lines of authority make forceful arguments for the conclusions they reach. The Seventh Circuit's decision in *Matter of Unroe,* 937 F.2d 346 (7th Cir.1991), however, compels this court to agree with the conclusion reached in *Zimmerman & Johnson.* The date established by Rule 3002 as the deadline for filing proofs of claim acts as a bar date and the failure to file within that deadline will prevent a claim from being considered for allowance under § 502.

In *Unroe,* a Chapter 13 debtor filed a plan on August 19, 1986. The plan listed a 1983 tax liability as a priority claim and a 1982 tax liability, as well as interest and penalties for both tax years, as unsecured claims.[3] The court established a bar date of January 6, 1987 for filing claims. The IRS filed a proof of claim for the 1982 taxes before that date. After that date, however, the IRS filed two "amendments" to its timely proof of claim. These amendments asserted a priority claim for the 1983 taxes. Over an objection that the amendments were, in reality, untimely proofs of claim and should not be allowed, the Bankruptcy Court allowed the late filed

claim for the 1983 taxes and the District Court affirmed. The Seventh Circuit was then called upon to address "whether the bankruptcy court properly permitted the tardy 1983 claim." *Unroe,* 937 F.2d at 348.[4]

The Seventh Circuit held that the bankruptcy court properly allowed the late claim. It did not, however, reach this conclusion based upon the proposition that lateness did not matter. Quite to the contrary, the decision is founded upon the proposition that late claims are *not* generally allowed. Indeed, the court specifically noted that "[l]ate filed claims, especially in the bankruptcy context, disrupt orderly discharge and should generally be barred." *Unroe,* 937 F.2d at 351. Nonetheless, the Seventh Circuit concluded that late proofs of claim may be allowed on equitable grounds and the question was a matter committed to the bankruptcy court's discretion. *Unroe,* 937 F.2d at 349–51.

If the date established in accordance with the Bankruptcy Rules for filing proofs of claim did not matter, the Seventh Circuit would have had no reason to address whether the bankruptcy court had the equitable power to allow a late claim. *Contra Rago,* 149 B.R. at 885 (assumption in *Unroe* that late filed claim is disallowed is mistaken). Unless late claims are otherwise barred, there is no need for the equitable discretion to allow them which the Seventh Circuit has affirmed the bankruptcy courts to have.

Further support that the date established by Rule 3002(c) operates as a bar date is found in *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In a Chapter 11 context, the Supreme Court held that an attorney's inadvertent late filing of a proof of claim would be permitted, under Bankruptcy Rule 9006, as timely because of the attorney's excusable neglect. Implicit in the Court's decision was the assumption that, unless excused, the un-

---

3. The plan did not specify any amounts for debtor's tax liability for these years.

4. The Seventh Circuit first concluded that each tax year constituted a separate claim. Thus, the claim for 1983 taxes was not properly an amendment to the earlier claim for the 1982 tax year which would, under Bankruptcy Rule 7015, oth-

erwise relate back in time to the original (timely) proof of claim. *Unroe,* 937 F.2d at 349. The court was, thus, required to face the question of whether or not the bankruptcy court had properly dealt with the untimely claim for the 1983 taxes.

timely filing would have dramatic consequences upon the allowance of the tardy creditor's underlying claim. It is true that the Supreme Court was confronted with a Chapter 11 case and the date for filing proofs of claim was established pursuant to Rule 3003(c)(3), instead of by Rule 3002(c). This in no way, however, undermines the Court's underlying assumption that a time limit for filing proofs of claim is procedurally appropriate and that the failure to meet that time limit will, unless excused, routinely prevent the claim from being allowed. Bankruptcy Rule 3003(c) implements § 501 in Chapter 11 cases in essentially the same manner as Bankruptcy Rule 3002(c) does for cases under Chapter 13. If *Hausladen's* conclusion—that the failure to file within the claims deadline established by Rule 3002 has no impact upon the allowance of a claim—is correct, it would seem that the deadline established by Rule 3003(c)(3) should be treated similarly and the fundamental premise which created the need for the Court to address the issue in *Pioneer Investment* would be missing.

The court must also recognize the validity of the trustee's policy argument that the absence of a meaningful bar date for filing proofs of claim will disrupt the orderly administration and distribution of the bankruptcy estate. The trustee needs to know who is entitled to share in the distributions which will be made to creditors. Giving meaning to the claims deadline, by not allowing untimely claims, promotes this knowledge. If any claim was to be allowed, regardless of when it was filed, it would be difficult, if not impossible, to determine when distributions could commence or how they should be allocated, because a claim filed tomorrow might render a distribution made yesterday totally inappropriate and future distributions might not be sufficient to correct the imbalance.

A legal principle which:

a) undermines the very foundation of decisions handed down by the Supreme Court and the Seventh Circuit;

b) can easily be circumvented by the artful wording of a plan; and

c) has the potential to disrupt the orderly administration of an estate and the ultimate distribution to creditors

has little to recommend it. Accordingly, this court rejects *Hausladen* and concludes that timeliness is a prerequisite for a proof of claim to be allowed. Untimely claims are not claims "filed under section 501" and, thus, cannot be "deemed allowed" under § 502(a). This conclusion places the burden upon the tardy creditor of taking affirmative action to bring its untimely claim to the court's attention and asking the court, in the exercise of its equitable discretion, to allow it or to treat it as though it were timely filed. Unless the creditor does so, untimely claims may be ignored.[5]

The parties have reserved the issue of whether the IRS' claim should be treated as timely or allowed for equitable or other reasons. The court will, therefore, schedule a pre-trial conference to address these issues by separate order.

---

5. This conclusion does not conflict with § 726(a)(2)(C) or § 726(a)(3), which permit tardy claims to share in a distribution from a Chapter 7 estate, so long as they have been allowed. Instead, it merely recognizes that the proper procedure for having such a claim allowed places the burden upon the tardy creditor to qualify for the opportunity to share in a distribution by taking affirmative action to have its claim allowed or treated as though it were timely. A contrary conclusion would require a trustee to repeatedly react to late claims by objecting to them. Since the court has the ability to permit late claims to share in a distribution, it only seems appropriate to place the burden of asking the court to exercise that authority upon the party who will benefit from its use.