**In the Matter of Raymond Arthur JENSEN, Alice Diann Jensen, Debtors.**

**Bankruptcy No. 98–40340.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

March 22, 1999.

Brad A. Woolley, Monticello, IN, for Debtor.

Richard L. Zaffiro, Wauwatosa, WI, for Creditor.

### *DECISION*

ROBERT E. GRANT, Bankruptcy Judge.

Prior to the 1994 amendments to the Bankruptcy Code, there was a dramatic difference of opinion over the consequences of failing to file a proof of claim within the time required, particularly in cases under Chapter 13. The precise topic of this debate was the question of whether a proof of claim had to be timely filed in order to be allowed. One side of the issue, which is best represented by *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn.1992) (en banc), argued that § 502(b) listed only eight reasons for not allowing a claim and untimeliness was not one of them. Consequently, it reasoned that once a proof of claim was filed, that claim was automatically allowed, through the operation of § 502(a), unless it could be disallowed for one of the reasons specified by § 502(b). The opposing view is represented by *In re Zimmerman*, 156 B.R. 192 (Bankr. W.D.Mich.1993) (en banc) and *In re Johnson*, 156 B.R. 557 (Bankr.N.D.Ill.1993). It

argued that the deadline, established by Bankruptcy Rule 3002(c), for filing claims was designed to give effect to § 501 and the failure to file a claim within the time required prevented it from being "a claim . . ., proof of which is filed under section 501", that could then be considered for allowance under § 502. Thus, timeliness was a prerequisite for allowing a claim.

The view advocated by *Zimmerman* and *Johnson* came to be followed by the majority of courts. Because it made timeliness a condition precedent to allowing a creditor's claim, the practice developed that creditors who had failed to file a timely claim would file a motion to allow late claim. Such a motion explained the reason for the delay and asked the court to treat the late claim as though it had been timely filed, so that it would have the opportunity to be considered on its merits and, potentially, share in any distribution from the bankruptcy estate. As this court observed when it entered the debate:

> [T]imeliness is a prerequisite for a proof of claim to be allowed. . . . This conclusion places the burden upon the tardy creditor of taking affirmative action to bring its untimely claim to the court's attention and asking the court, in the exercise of its equitable discretion, to allow it or treat it as though it were timely filed. Unless the creditor does so, untimely claims may be ignored. *In re Keck*, 160 B.R. 112, 116 (Bankr. N.D.Ind.1993).

Congress ended the debate with the Bankruptcy Reform Act of 1994. It did so by adding to § 502(b)'s list of reasons for not allowing a claim a new reason for refusing to do so: the fact that "proof of such claim is not timely filed, . . ." 11 U.S.C. § 502(b)(9). Although Congress laid the issues surrounding the allowance of late claims to rest, the manner in which it addressed them produced a subtle but important shift in how late claims are dealt with. While lateness is now a recognized reason for denying a claim, the importance of saying this in § 502(b), rather than

someplace else, is that timeliness is no longer a prerequisite for allowing a creditor's claim. As the process now works, a creditor files its claim, alá § 501; then, through § 502(a), that claim is deemed allowed, unless it is objected to. Thus, even late claims are deemed allowed unless objected to. If an objection is filed, lateness is a reason not to allow the claim.

■ The court's parsing of the statute is more than a semantic exercise. Although the distinction—between timeliness as a prerequisite for allowing a creditor's claim and untimeliness as a reason for objecting to it—may seem to be a subtle one, it has tremendous procedural significance. By including the failure to timely file among the reasons for denying a claim, the statute has shifted the responsibility for raising the issue from the tardy creditor to other parties. Timeliness can no longer be viewed as part of the creditor's initial burden—a prerequisite to having its claim allowed. Instead, it has become an affirmative defense, with the responsibility for raising the issue resting with the party who objects to the claim. Since untimeliness is now a defense to a creditor's claim, the procedural observations in *Keck*, 160 B.R. at 116, and cases like it, which concluded that untimely claims could be ignored unless the tardy creditor took affirmative action to bring its late claim to the court's attention, are no longer valid.

Although the framework for dealing with late claims has changed, old habits die hard and creditors continue to file motions to allow late claims. Such a motion has been filed in this case. Premium Lease and Finance Company holds a lien upon debtors' truck tractor. A plan which commits to paying it $32,000 on account of this secured claim, together with interest at 8%, has been proposed and confirmed without objection. Nonetheless, despite the fact that it received appropriate notice of this case and had actively participated in it, Premium Lease did not file a proof of claim within the time required. After the deadline for doing so passed, it filed the motion to allow late claim which is now before the court. The motion was duly noticed and contains all of the usual and expected explanations for the delay, which, given the lack of objection, would normally persuade the court to grant it without comment. It was, however, filed after the Seventh Circuit's decision in *Matter of Greenig*, 152 F.3d 631 (7th Cir.1998). That case addressed the debtors' objections to a motion to allow late claim, which had been filed in circumstances very similar to those now before the court. The court concluded that the bankruptcy judge has no equitable power to allow an untimely claim. *Id.*, at 635. Because Premium Lease's motion appeared to seek relief which this court could not grant, the court ordered a hearing and invited additional briefs.

■ Having considered the issue, the court concludes that Premium Lease's motion was unnecessary. It seeks relief that the creditor already receives as a matter of course and, thus, raises no real issue for the court to decide. It is, therefore, moot.

■ A tardy creditor no longer has to take affirmative action to bring its late claim to the court's attention in order to have it allowed. Late or not, Premium Lease's claim, like all other filed claims, stands as allowed, unless and until a party in interest objects. Only then will the court need to become involved in the claims process and consider denying the claim because it was not timely. As of this date, no one has objected to Premium Lease's claim, although all concerned are aware that it is not timely. Until that happens, there is no need to consider the consequences of its untimely filing.

Few things are truly black and white and the issues concerning late claims are no different. As a result, the court can readily hypothesize circumstances in which parties might not be inclined to object to a late claim or in which the court might not be inclined to deny it. A debtor might have a strong desire to fully pay all of its

creditors and its plan adequately funded to do so. If both timely and untimely claims can be fully paid, no one would be harmed by allowing that to happen. *See In re Avery,* 134 B.R. 447, 448–49 (Bankr. N.D.Ga.1991). If the creditor was never given any notice of the case or the claims bar date, refusing to allow it to participate in a distribution from the estate, when it wishes to do so, would seem to present significant due process concerns. *See United States v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087, 1089 (6th Cir.1990); *In re Spring Valley Farms, Inc.,* 863 F.2d 832 (11th Cir.1989); *Brown v. Seaman Furn. Co.,* 171 B.R. 26, 27 (E.D.Pa.1994); *Adam Glass Service Inc. v. Federated Dept. Stores Inc.,* 173 B.R. 840 (E.D.N.Y. 1994); *In re Cole,* 146 B.R. 837 (D.Colo. 1992); *In re Smith,* 217 B.R. 567 (Bankr. E.D.Ark.1998). An apparently untimely claim might only seem to be late; if the tardy proof of claim can be construed as an amendment to an earlier, timely "informal proof of claim", it may relate back to the earlier date and, thus, be allowed. *See Matter of Unroe,* 937 F.2d 346 (7th Cir. 1991); *In re Ebeling,* 123 F.2d 520 (7th Cir.1941); *In re Hall,* 218 B.R. 275 (Bankr.D.R.I.1998).

Untimely secured claims offer additional scenarios. Arguably, before a creditor can have a secured claim, it must first have an allowed claim, *see* 11 U.S.C. § 506(a)("An allowed claim ... secured by a lien ... is a secured claim ..."), so that even a secured creditor would have to a file proof of claim in order to have its claim allowed. Nonetheless, the case law is divided on the question of whether secured creditors are required to file claims and, if so, whether there is a deadline for doing so. *Compare, In re Branch,* 228 B.R. 831 (Bankr. W.D.Va.1998); *In re Schaffer,* 173 B.R. 393 (Bankr.N.D.Ill.1994); *In re Macias,* 195 B.R. 659 (Bankr.W.D.Tex.1996); *In re Alderman,* 150 B.R. 246 (Bankr.D.Mont. 1993); *In re Van Hierden,* 87 B.R. 563 (Bankr.E.D.Wis.1988) (secured creditor must file a timely proof of claim to be paid under plan) *with In re Babbin,* 160 B.R. 848 (D.Colo.1993); *In re Robert,* 171 B.R. 881 (Bankr.N.D.Cal.1994); *In re Rome,* 162 B.R. 872 (Bankr.D.Colo.1993); *In re Burrell,* 85 B.R. 799 (Bankr.N.D.Ill.1988) (secured creditors need not file timely proof of claim to be paid under plan).

Where, as here, a confirmed plan specifically provides for a particular creditor's secured claim, but neither the creditor nor anyone acting on its behalf, *see* Fed. R.Bankr.P. Rule 3004; 3005, files a timely claim, there may be no practical alternative to letting it be done belatedly. If it will not be allowed to receive the distribution the plan allocated to it, should the creditor be relieved of the automatic stay to proceed against its collateral? *But see, Macias,* 195 B.R. at 662 n. 5. If so, we have created a ready means by which secured creditors can try avoid becoming involved in bankruptcy proceedings. *See,* 2 Keith M. Lundin, Chapter 13 Bankruptcy § 7.18, p. 7–23 (2d.Ed.1994). The alternative to letting the tardy secured creditor receive what the plan allocated to it is to take that money and distribute it to the creditors that did file timely claims. Although the secured creditor would not receive its payments under the plan, it could still retain its lien and, months or years later, when the plan has been performed, debtor discharged, and the case has run its course, it would be able to proceed, in rem, against its collateral and recover whatever value it might have left. *See Schaffer,* 173 B.R. at 395. *But see,* 11 U.S.C. § 506(d); Lundin, § 7.27 p. 7–60 – 7–61 (if a secured claim is denied because it is untimely, § 506(d) may void the lien). While seemingly a harsh result, some might consider it an appropriate consequence for failing to file a timely claim; that is until the secured claim in question is the arrearage on the mortgage and the entire purpose for the case was to save the debtor's home from foreclosure, by curing the default. *See In re Harris,* 64 B.R. 717 (Bankr. D.Conn.1986). Of course, in that situation, the debtor could always voluntarily dismiss the case, file again, and hope that things

are done correctly the second time around. *But see,* 11 U.S.C. § 109(g)(2).

Congress has created a mechanism for dealing with late claims that gives them the opportunity to share in a distribution under a confirmed plan. Only if a party in interest objects to that claim will the court need to consider denying it and whether there are exceptions to the seemingly absolute rule announced in *Greenig.* Until then, even late claims are deemed allowed. Accordingly, Premium Lease's motion to allow a late claim is unnecessary. The claim stands as having been deemed allowed. The motion is therefore moot.