**In re Michelangelo PARR, Debtor.**

**In re Betty J. SULLIVAN, Debtor.**

**In re Junior C. BALL, Debtor.**

**In re Belinda Browder EDWARDS, Debtor.**

**Bankruptcy Nos. 92–72558, 92–72524, 92–72814 and 92–73042.**

United States Bankruptcy Court, N.D. Alabama, W.D.

Dec. 15, 1993.

Bobby H. Cockrell, Jr., Tuscaloosa, AL, for debtor Michelangelo Parr.

E. Calhoun Wilson, Tuscaloosa, AL, for debtor Betty J. Sullivan.

A. Lee Tucker, Sumiton, AL, for debtor Junior C. Ball.

Cheryl Blume, Tuscaloosa, AL, for debtor Belinda Browder Edwards.

C. Michael Stilson, Trustee.

U.S. Atty. Gen., Washington, DC, U.S. I.R.S., Birmingham, AL, Office of U.S. Atty., Birmingham, AL, and DCH Regional Medical Center Credit Union, Tuscaloosa, AL, parties in interest.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

These matters came before the court on the objections of C. Michael Stilson, Standing Chapter 13 Trustee, to untimely filed claims. The trustee sought to have the claims disallowed because of their late filing. The creditors, the Internal Revenue Service in three of the cases (IRS); the DCH Regional Medical Center Credit Union, in one, objected to disallowance of their claims. The material facts in each case are the same and the dispositive legal issue is identical. The court is therefore consolidating the cases for decision. After studying the arguments and briefs of the parties and conducting independent research, it is the court's view that the Trustee's objections are due to be **SUSTAINED** in all four cases and the claims in issue are due to be **DISALLOWED**.

## FINDINGS OF FACT

### Michelangelo Parr

Michelangelo Parr filed for a Chapter 13 reorganization of his personal finances October 16, 1992, listing the United States Internal Revenue Service and the U.S. Attorney's Office on his list of creditors to be served with notice of his bankruptcy.

Notice of the bankruptcy, including a February 18, 1993 deadline for filing proofs of claim (Doc. 3 of Docs. 2, 3 and 4), was served on the listed creditors by the Trustee October 21, 1992. His Chapter 13 plan was confirmed on November 14, 1992. (Doc. 10) The IRS did not object to confirmation of the plan, nor did it appeal the confirmation order.

The Internal Revenue Service filed Claim No. 7 for $2,588.11 in taxes on February 22, 1993, four days after the bar date. On March 24, 1993, C. Michael Stilson, Chapter 13 Standing Trustee, filed an objection to the claim, asking the court to disallow it because it was filed after the bar date. The court executed the order on the bottom of the pleading which disallowed the claim—but gave IRS 30 days to object. (Doc. 12)

The United States Attorney's Office did object on behalf of IRS on April 22, 1993. (Doc. 13). On June 4, 1993, the IRS filed a brief in which it contended basically that 11 U.S.C. 502 provides the exclusive bases for disallowing claims in bankruptcy—and that Section 502 does not list untimeliness of filing as base for disallowance of claims deemed filed under Section 501. (Doc. 15)

The Trustee, on the other hand, filed a brief June 29, 1993, which contended that 11 U.S.C. § 501(a) was the controlling section,

fleshed out by Fed.R. of Bankr.P. 3002(c) which sets the deadline for filing proofs of claim in Chapter 13 cases. If the proof of claim is not timely filed under Section 501 it is not deemed filed under Section 502, the Trustee argued.

On August 5, 1993, the IRS filed its Reply of United States to Brief on Behalf of Trustee. (Doc. 19) Following receipt of this brief, the court took the issue of untimely filed claims in Chapter 13 under consideration.

The cases to be consolidated with the Parr case for decision include the following and basically contain the same points in the pleadings of the parties. The other cases include the following:

**Betty J. Sullivan**

Betty J. Sullivan filed her petition for a Chapter 13 reorganization (BK 92–72524) on October 14, 1992. (Doc. 1) Her original mailing list of creditors included the United States Attorney's Office in Birmingham; the Internal Revenue Service and the United States Attorney General.

The notice of Ms. Sullivan's bankruptcy, including a deadline for filing proofs of claims as February 18, 1993, was mailed out by the Trustee October 17, 1992 to those on the list, according to the certificate of service. (Docs. 2, 3 and 4). Ms. Sullivan's Chapter 13 plan was confirmed by the court November 23, 1992. (Doc. 7). The IRS did not object to the plan nor did it appeal the confirmation order.

February 22, 1993, four days after the deadline, IRS filed a proof of claim (Claim No. 13) for a total $22,659.64 for taxes and penalty. Stilson, as trustee, filed an objection to the claim March 25, 1993 asking that it be disallowed because it was tardily filed. In the same pleading the court again granted the trustee's objection—but gave the IRS 30 days to object. (Doc. 11)

The IRS objected to the disallowance on April 22, 1993. (Doc. 12). The IRS said in its later filed brief that the proof of claim was mailed from Birmingham on February 12, 1993. Briefs were filed by the Trustee, the debtor's counsel and the IRS. The court took this issue under consideration in the

Sullivan case August 5, 1993 with receipt of the last reply brief.

**Junior C. Ball**

Junior C. Ball filed for Chapter 13 reorganization November 19, 1992. The Internal Revenue Service was listed as a creditor on the mailing list of creditors filed with his original bankruptcy petition. (Doc. 1)

The notice of the bankruptcy, which included the March 17, 1993 "Deadline to file a claim" was mailed to all parties on the list November 24, 1992, according to the Trustee's certificate of service. Ball's Chapter 13 plan was confirmed by the court January 22, 1993. (Doc. 8) The IRS neither objected to the plan nor appealed the order confirming it.

The IRS filed Claim No. 4 for a total $2,792.42 on March 18, 1993—one day after the deadline for filing claims had passed. The IRS' brief said that the claim was mailed from Birmingham March 16, 1993.

Stilson, as Trustee, objected to the claim and asked for its disallowance as untimely filed in a pleading filed April 8, 1993. The court sustained the objection and granted the disallowance—but gave the IRS 30 days to object. (Doc. 12)

IRS objected May 3, 1993. (Doc. 16). The court took the case under advisement July 15, 1993, after the time for briefs had run.

**Belinda Browder Edwards**

Belinda Browder Edwards filed her petition for reorganization of personal finances under Chapter 13 (BK 92–73042) on December 21, 1992. Both DCH Regional Medical Center Credit Union and DCH Regional Medical Center were included in the mailing list of creditors filed with her original bankruptcy petition. (Doc. 1)

The notice of her bankruptcy, including the "Deadline to file a proof of claim" as April 22, 1993, was mailed to the creditors on the list December 23, 1992, according to the Trustee's certificate of service. (Docs. 2, 3 and 4)

Ms. Edwards' Chapter 13 plan was confirmed by the court January 25, 1993. (Doc. 8) DCH Regional Medical Center Credit Union neither objected to the confirmation, nor appealed the order of confirmation.

On July 19, 1993, the credit union filed Proof of Claim No. 6 for $475.69. On August 17, 1993, the Trustee filed an objection to the claim and asked for its disallowance. (Doc. 17) The court sustained the objection and granted disallowance in an order on the same pleading but contingent on DCH credit union not objecting within 14 days.

On August 23, 1993, the DCH Credit Union did object and asked for a hearing on the trustee's objection to claim. (Doc. 18) At the October 26, 1993 hearing, counsel for DCH Credit Union was offered the opportunity to brief the issue and to receive copies of the briefs in the IRS cases. (Doc. 23 courtroom notes) The court took this case under submission November 15, 1993.

Jurisdiction exists in this matter under 28 U.S.C. § 1334(b). Because claim allowances are involved, the cases are core proceedings under 28 U.S.C. § 157(b)(2)(B).

### I.

***The material facts and legal issue are the same in all four cases, and thus they can be consolidated for judgment under Fed.R.Civ.P. 42(a)***

**A. The material facts are the same in all four cases.**

In all four of these Chapter 13 cases, the debtors included the objecting creditors in the original mailing lists filed with the petition. Thus both creditors received timely notice, along with all others on the lists that a bar date had been set for filing proofs of claim.

For whatever reason, it is also undisputed that all four of the claims were not filed with the Bankruptcy Clerk's Office by the bar date. In all four cases, C. Michael Stilson, the Chapter 13 Standing Trustee, objected to the claims, asking that they be disallowed as untimely filed. In all four cases, the creditors have objected to disallowance.

**B. The four cases involve the identical question of law.**

Based on the same material factual positions, the cases pose an identical legal question.

That question is: When a creditor, with timely notice of a Chapter 13 debtor's bankruptcy and of the bar date for filing proofs of claim, nevertheless files a claim late, may that claim be disallowed?

**C. Fed.R.Civ.P. 42(a) provides that such cases may be consolidated.**

The disputes in issue here are contested matters under Fed.R.Bankr.P. 9014. That rule applies Fed.R.Bankr.P. 7042 to contested matters. Rule 7042, in turn, applies Fed.R.Civ.P. 42. Fed.R.Civ.P. 42(a) provides the following:

> **(a) Consolidation.** When actions involving a *common question of law or fact* are pending before the court, it may order a joint hearing or trial of any or all matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

■ Therefore, since these cases are in the same factual posture and the legal question pending in all four is identical, the court will consolidate the four for decision.

### II.

***11 U.S.C. § 501(a), fleshed out by Fed. R.Bankr.P. 3002(c) defines what proofs of claim may be "deemed allowed" under Section 502. Thus, these are not allowed the missed Rule 3002(c) deadline.***

**A. The requirements of 11 U.S.C. § 501 are fleshed out by Fed.R.Bankr.P. 3002(c) which sets the time deadline for filing a proof of claim. A claimant must meet the requirements of Section 501, and then and only then is it "deemed allowed" under Section 502.**

When an individual debtor files a petition for a reorganization of his personal finances under Chapter 13, an estate is created against which many claims are pending. 11 U.S.C. § 501[1] is the tool for determining

---

**1.** 11 U.S.C. § 501 reads in pertinent part: **Filing of proofs of claims or interests.**

who may file a claim and how it must be filed. 11 U.S.C. § 502 [2] states that a claim "filed under Section 501" is "deemed allowed." The Section 502 provides a means for determining if the claims "filed under Section 501" and "deemed allowed", may be disallowed.

Section 501 refers to the "timely" filing of a proof of claim—but does not itself define timely. The legislative history of the Bankruptcy Act of 1978 shows that Congress intended what are now the Federal Rules of Bankruptcy Procedure to fill in such procedural gaps—even when a procedural deadline can have a substantive effect.

At the time of adoption of the act, House and Senate Reports on Section 501 stated:

> The Rules of Bankruptcy Procedure (now designated the Federal Rules of Bankruptcy Procedure) and practice under the law will guide creditors as to when filing is necessary and when it may be dispensed with. In general however, unless a claim is listed in a chapter 9 or chapter 11 case and allowed as a result of the list, *a proof of claim will be a prerequisite to allowance for unsecured claims, including priority claims and the unsecured portion of a claim asserted by the holder of a lien.*
>
> *The Rules of Bankruptcy Procedure will set the time limits,* the form, and the procedure for filing, *which will determine whether claims are timely or tardily filed.* (emphasis added)

H.R.Rep. No. 595, 95th Cong., 1st Sess. 351 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 61 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5847, 6307.

> (a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.
> (b) If a creditor *does not timely file a proof of such creditor's claim,* an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.
> (c) If a creditor *does not timely file a proof of such creditor's claim,* the debtor or the trustee may file a proof of such claim.

**2.** 11 U.S.C. § 502 reads in pertinent part:
**Allowance of claims or interests.**

Fed.R.Bankr.P. 3002 provides in pertinent part:

**Filing Proof of Claim or Interest.**

**(a) Necessity for Filing.** An unsecured creditor or an equity security holder *must file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed,* except as provided in Rules 1019(3), 3003, 3004 and 3005.... (emphasis added)

**(c) Time for Filing.** In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or *chapter 13 individual's debt adjustment case, a proof of claim must be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code* ... (emphasis added)

Rule 3002(c) does provide some exceptions to that filing deadline but none are relevant to the facts in these four cases.

So the requirements for filing a claim set out in Section 501 and Rule 3002, including the deadline set by 3002(c), must be met as a threshold before the claim can move on to being "deemed allowed" under Section 502. For only a claim "which is filed under section 501 of this title" can ever be "deemed allowed" under Section 502.

If the creditor had adequate notice and failed to meet the deadline set under Section 501 as defined by Rule 3002, the claim is not deemed filed and no objection or invocation of the Section 502 grounds for disallowance is necessary.

If an objector shows that a noticed creditor missed the bar date, it is as if the claim never existed for it is not a "claim which is filed under Section 501." Thus it cannot be

> (a) A claim or interest, *proof of which is filed under section 501 of this title,* is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under Chapter 7, objects.
> Section 502(b) provides that on objection to a claim properly filed under Section 501 and thus "deemed allowed", the court will determine the amount of the claim as of the date of the bankruptcy and allow the claim in that amount—except in eight enumerated circumstances in which the court is barred from allowing the claim.

"deemed allowed" under Section 502 since that section only affects claims which have met the filing requirements of Section 501.

A tardily filed unsecured claim in a Chapter 13 is not really subject to "disallowance" though for lack of a better term that is the word the courts use. Such a late claim is closer legally to a nullity, since it was never an "allowed" claim to be "disallowed."

Consequently, the claims of the IRS and of the DCH Regional Medical Center Credit Union are not claims "filed under Section 501" and cannot be "deemed allowed" under Section 502(a).

While this matter seems simple enough to this court, a single case from Minnesota has been the focus of considerable litigation by creditors who failed to file their claims on time.

**B. A single case, _In re Hausladen_, 146 B.R. 557 (Bankr.D.Minn.1992) has produced most of the recent litigation in this area. With all due respect, _Hausladen's_ reasoning is flawed; its holding, incorrect.**

With all due respect, this court must disagree with the rationale expressed in _In re Hausladen_, an _en banc_ decision by the United States Bankruptcy Court for the District of Minnesota.

The case, in essence, does not acknowledge that proper filing under Section 501 and Rule 3002 and being then "deemed allowed" under Section 502 is a two-step process. _Hausladen_ collapses the statutes and the rule into one concept. In the view of this court, _Hausladen's_ one-step concept is erroneous.

Many other courts which have become enmeshed in the litigation created by _Hausladen_ agree that it is a flawed decision. _See_ most recently in the Northern District of Alabama, Judge James S. Sledge's _In re Turner_, 157 B.R. 904 (Bankr.N.D.Ala.1993); _In re Zimmerman_, 156 B.R. 192 (Bankr. W.D.Mich.1993) (_en banc_); _In re Johnson_, 156 B.R. 557 (Bankr.N.D.Ill.1993) and _In re Bailey_, 151 B.R. 28 (Bankr.N.D.N.Y.1993).

Some few courts have followed _Hausladen_. However, this court believes the view of the Section 501, Rule 3002 and Section 502 relationship expressed in _Turner, Zimmerman, Johnson_ and _Bailey_ is the correct one.

**1. The _Hausladen_ court failed to understand the substantive/procedural balance between Section 501, Rule 3002(c) and Rule 502.**

In keeping with this court's view, Judge Stephen Gerling stated in _Bailey_:

The _Hausladen_ court finds that the current practice of disallowing late filed claims resulted from improperly carrying over pre-code law into present practice. _Hausladen, supra_, 146 B.R. at 559. That court observes that under the Bankruptcy Act (former law) late claims were explicitly disallowed: "[s]ection § 57(n) of the Act provided that ... '[c]laims which are not filed within six months after the first date set for the first meeting of creditors _shall not be allowed_ ...'" _Hausladen, supra_, 146 B.R. at 559 (emphasis in original) (citing 11 U.S.C. § 93(n)) (repealed Oct. 1, 1979). Former Bankruptcy Rule 13–302(e)(2) implemented this time bar by adopting the time limits on the filing of claims established by § 57(n) of the Act. _Hausladen, supra_, 146 B.R. at 561 (citing the Advisory Committee Note to Rule 13–302(e)(2)). The legislative history of the Bankruptcy Reform Act (basis for present law) reveals, however, that in revising and modernizing the bankruptcy law "nearly all procedural matters [formerly incorporated in the provisions of the Act] _have been removed and left to the Rules of Bankruptcy Procedure_...." H.R.Rep. No. 595, 95th Cong., 1st Sess. 449 (1977), _reprinted in_, 1978 U.S.Code Cong. & Admin.News 5963, 6405. _Thus, the fact that former § 57(n) of the Bankruptcy Act explicitly disallowed late claims while Code 502(b) does not, fails to establish an abandonment of the Congressional "bar date" concept in light of the language of Fed. R.Bankr.P. 3002(a)._ (emphasis added)

_Bailey_, 151 B.R. at 32.

This court agrees with Judge Gerling's view of Congressional intent as to the substantive/procedural balance between the new Bankruptcy Act adopted in 1978 and the procedural rules which implement it. It is obvious that, at times, procedural rules can have substantive, even outcome-determina-

tive, results as do those rules setting periods for appeal of a judgment (Fed.R.Bankr.P. 8002 for the bankruptcy courts).

As Judge Sledge pointed out in *Turner:*

The federal courts adopt rules of procedure promulgated under the authority under the authority of an enabling statute, which requires that the rules not change substantive rights. 28 U.S.C. § 2071. *The rules should be followed unless a court determines that a rule violates the enabling statute or the Constitution.* (emphasis added)

*Turner,* 157 B.R. at 907.

Rule 3002(c)'s deadline for filing claims under Section 501 has been invoked again and again. It has not been held to violate either statute or the Constitution—despite *Hausladen's* contention that it somehow conflicts with application of 11 U.S.C. § 726.

**2.** ***Hausladen's*** **reliance on Section 726[3] is misguided since that section applies only to Chapter 7 liquidation, a totally different legal and economic entity than an ongoing Chapter 13 case, operating a reorganization plan.**

*Hausladen's* use of 11 U.S.C. § 726 is inapposite since that section affects only distribution in Chapter 7 and has nothing to do with a Chapter 13 case operating under distributions set in its confirmed plan of reorganization.

As pointed out in *Johnson:*

The *Hausladen* court makes one final effort to resurrect a perceived conflict between the Code provisions and the Rules of Procedure by pointing to Section 726. *Hausladen,* 146 B.R. at 560. That section governs the distribution of property in Chapter 7 and expressly provides for the payment of tardily filed claims. Because not allowing untimely or tardily filed claims in a Chapter 7 conflicts with the express provisions of Section 726, the *Hausladen* court contends that Section 726 illustrates that the timeliness of a claim is relevant only for purposes of treatment, not allowance. Consequently, the *Hausla-*

*den* court concludes that courts should allow untimely or tardily filed claims, and then look to the Chapter 13 plan to determine the treatment of such claims. Although the *Hausladen* court's observation may have some merit in a Chapter 7 context, *it falls far short of recognizing a similar conflict in a Chapter 13 context because Chapter 13 plans do not incorporate the distribution scheme recognized in liquidations.*

The distribution scheme in liquidations is to ensure all parties have an opportunity to collect from limited assets. A plan of reorganization in Chapter 13 cases is the voluntary payment by debtors of obligations over a period of time from *current and future assets. See In re Casper,* 153 B.R. 544 (Bankr.N.D.Ill.1993). The dissimilarity between the Chapters is further demonstrated by the discharge provisions. Unlike a discharge in Chapter 7, a discharge under Chapter 13 is much narrower in scope by discharging only those claims provided for in the plan or disallowed pursuant to Section 502, 11 U.S.C. § 1328(a). Thus, Chapter 13 places a heavy burden upon a debtor to account and provide for treatment of his or her creditors' claims under a plan of reorganization—a treatment which is automatically provided in liquidations pursuant to Section 726. (emphasis added)

*Johnson,* 156 B.R. at 561–2.

This court agrees. Section 726's distribution priority for tardily filed claims in Chapter 7 is irrelevant to whether a claim is properly filed under the requirements of Section 501, in tandem with Rule 3002, so that it may be "deemed allowed" under Section 502 in a Chapter 13 reorganization.

### III.

### *Policy demands a time certain for filing claims in Chapter 13.*

**A. It would be impossible to conduct orderly Chapter 13 reorganizations if there were no cutoff date for filing proofs of claim.**

From the standpoint of practicality, it would be an administrative horror to attempt

---

**3.** 11 U.S.C. § 726 is the section which sets the distribution order for the assets of the bankruptcy estate gathered for liquidation by a trustee.

In its order of distribution, it does set a low priority for tardily filed claims.

to administer Chapter 13 reorganizations if there were no bar date for the filing of claims.

In a perfect world, no one would be in Chapter 13 at all—or if they were, they would know exactly how much they owed and to whom. Unfortunately, many of the individuals in Chapter 13 are unsophisticated, poorly educated, low-income persons who honestly lack knowledge of their own financial condition.

In jurisdictions like this one where plans may be confirmed before the running of the bar date, a minority of debtors, and their administering trustee, already experience unpleasant surprises in the way of large obligations (such as previously unliquidated medical copay expenses) which can require modification of the plan—or even render it totally unfeasible.

But as things stand now, the bar date set by Section 501 operating with Rule 3002(c) sets some sort of cutoff point after which both debtor and trustee can be reasonably certain of the total prepetition indebtedness that must be satisfied over the three to five-year term of the plan.

If all creditors were allowed to take as long as they wished to file a proof of claim, the situation would be totally unmanageable. Since the maximum time allowed for a Chapter 13 is five years, late-filed claims, particularly of the size of the tax claims involved in these cases could completely derail many plans and make reorganization within the debtor's income unfeasible.

Alternatives would either be Chapter 13 cases revamped to pay zero percent to unsecured creditors or Chapter 7 liquidation— neither of which is a desirable socio-economic result.

As the bankruptcy judges for the Western District of Michigan noted *en banc* in *Zimmerman:*

> Calculations involving plan distributions would be extremely difficult even if late claims were paid less than other claims because the late claims would still be taking something away from the timely filed claims. *The debtor and all timely filing creditors benefit from the claims bar date because the case can be administered much more efficiently. On the other hand, no injustice results by barring late claims of unsecured creditors who have timely notice of the bar date.* (emphasis added)

*Zimmerman,* 156 B.R. at 199.

This court concurs with that view of the bar date.

## CONCLUSION

The question posed by these cases is the following: When a creditor, with timely notice of a Chapter 13 debtor's bankruptcy and of the bar date for filing proofs of claim, nevertheless files a claim late, may that claim be disallowed?

This court's answer to that question is "Yes." Therefore, the claims in issue in these four cases are all "disallowed" (actually nullified) as time-barred. Since that is so, the Trustee's objection is due to be sustained and the claims thrown out.

The cases and the claims disallowed in each are the following: Michelangelo Parr, BK 92–72558, Claim No. 7 for $2,588.11 by the IRS; Betty J. Sullivan, BK 92–72524, Claim No. 13 for $22,659.64 by the IRS; Junior C. Ball, BK 92–72814, Claim No. 4 for $2,792.42 by the IRS and Belinda Browder Edwards, BK 92–73042, Claim No. 6 by the DCH Regional Medical Center Credit Union, $475.69.

This Memorandum of Decision constitutes findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052. A separate order will be entered consistent with this memorandum.

**DONE AND ORDERED.**